## Ticonic Bank *versus* Levi Johnson.

When the payee of a promissory note writes the words, "*holden without demand or notice*," on the back of the note, and signs it, and another person writes his name directly below it; whether this is or is not to be considered a waiver of demand and notice on the part of the second indorser, an agreement by him to waive demand and notice may be proved by oral evidence, or may be inferred from circumstances.

Where a note is discounted at a bank for the benefit of the first indorser, and the money is passed to his credit as a deposit, and a portion of it remains in the bank until the note becomes payable; it would seem to be optional with the bank to retain this money in part payment of the note, or not. The omission to retain it, cannot destroy the right to recover of another indorser the full amount.

Where the cashier of a bank has made an entry on the bank books, that a certain note had been discounted at a certain time, it is competent for him to testify that the entry was in fact but conditional, and made without authority, and that the note was not then discounted.

By accident the report of the case never came into the hands of the Reporter. The facts appear, however, to be sufficiently stated in the opinion of the Court, to understand the questions of law involved in the decision.

*Wells* and *Hutchinson* argued for the defendant, and cited, *Farmer* v. *Rand*, 14 Maine R. 225; *Central Bank* v. *Davis*, 19 Pick. 373; *Smith* v. *Hiscock*, 14 Maine R. 449; *Gowen* v. *Wentworth*, 17 Maine R. 66; *Goddard* v. *Cutts*, 2 Fairf. 440; Bayley on Bills, 150, 398; *Creamer* v. *Perry*, 17 Pick. 332; *French* v. *Grindle*, 15 Maine R. 163.

*Boutelle* argued for the plaintiffs, and cited, *Fuller* v. *McDonald*, 8 Maine R. 213; *Drinkwater* v. *Tebbetts*, 17 Maine R. 16; *Boyd* v. *Cleavland*, 4 Pick. 525; *Taunton Bank* v. *Richardson*, 5 Pick. 436; *Barker* v. *Parker*, 6 Pick. 80; Chitty on Bills, (9th Am. Ed.) 535, and notes.

The opinion of the Court was drawn up by

Whitman C. J. — This action is against the defendant as an indorser of a negotiable note of hand. No demand on the makers was proved. The plaintiffs contended that the defendant had agreed to waive any such demand. To prove this

they relied upon the indorsement of the defendant, which was in blank, but directly under the name of M. P. Norton, the payee, on the back of the note, over which had been written by Norton, when he indorsed the note, the words, "holden without demand or notice;" and upon the testimony of one Perkins, the cashier of the bank, who stated, that, on the second of January, 1837, Norton presented the note for discount; and it was then agreed to discount it, if he would indorse it, waiving demand and notice; and get the defendant to do the same, to which Norton assented; and received one hundred dollars in anticipation on account of it; and was to receive the residue after the defendant should have indorsed it; that, on the tenth or eleventh of the same January, he received a letter from the defendant, saying he would indorse the note, left by Norton at the bank for discount against Dwinell & als. for $1500, for his, Norton's accommodation; that, between the tenth and eighteenth of the same month, the defendant called at the bank, when the note was presented to him for his indorsement, whereon he read the words, "holden without demand or notice," over Norton's name; and asked if he should place his name immediately under Norton's, to which he, the witness, replied, that he had better do so, as it would save the necessity of demand and notice; to which the defendant assented, and immediately so placed his name.

The plaintiffs insist that by so placing his name on the note he waived demand and notice; but it may well be questioned, whether the mere placing the name of the defendant under that of the payee, over whose name a waiver was placed, although so written as to apply to one or many, would render him liable without demand and notice. In *Central Bank* v. *Davis*, 19 Pick. 373, it was held, that the contracts of indorsers on notes are several; and that words waiving the right to notice, over the payee's name, applied only to the payee. The words, in that case, might be applied to the plural, as well as to the singular number. Yet the Court say, "the waiver was an essential part of the indorsement; and materially affected the liability of the first indorser. It was his several act, and

does not bind any one else; and further, "then follows the blank indorsement of the defendant, which the holder has a right to fill up; but, in doing it, he is not at liberty to write just what he pleases over the name; but is bound by mercantile usage, which on this point has the force and certainty of law."

In *Farmer* v. *Rand*, 14 Maine R. 225, cited by the counsel for the defendant, however, it was decided that, "we waive demand and notice," over the name of the payee, might be applied to the subsequent indorsers. This may seem to be in conflict with the reasoning of the Court in *Central Bank* v. *Davis*.

But however this may be, the case at bar is distinguishable from the case of *Farmer* v. *Rand*, in one particular. The waiver here is in language, which may admit of a singular, as well as of a plural application. In that case the word "we" would embrace, necessarily, all who could properly be, by the other words in connexion with it, included.

The other grounds relied upon by the plaintiffs, as to this point, are more clearly tenable. The agreement to waive demand and notice may be proved orally, or be inferred from circumstances. *Fuller* v. *McDonald*, 8 Greenl. 213; and *Bank* v. *Davis*, before cited. There does not seem to be any room to doubt, that the defendant perfectly understood the agreement between him and the plaintiffs, that demand and notice were to be waived. What transpired between him and the plaintiffs, or their cashier, plainly shows it to have been so.

The defendant, however, insists that, from the memorandum made by the president of the bank, it is to be presumed, that not more than eleven hundred dollars of the amount credited for the note, had been paid when the note fell due; and contends, that what then remained thereof might and should have been retained. But the cashier testifies that the whole was deposited to the credit of Norton, and paid out as he drew checks for it. Whether the whole had been actually paid out at the time the note fell due, or not, does not appear. And from the authority cited, Bayley, 398, it only appears, that the

plaintiffs might have retained a balance remaining deposited to the credit of Norton, when the note became due, if they had thought it proper to do so. It was clearly optional with them to do so or not.

It was further objected, that the agreement with Norton was usurious, and therefore void. But our statute on that subject, does not vacate the contract, *in toto,* for that cause. Only an abatement of the excess, over lawful interest reserved or taken, could be claimed, together with costs for the defendant. There was, however, no specific agreement for an excess of interest, over and above the legal rate. But the ground taken is, that the operation of the transaction, as indicated by the memorandum of the president, had the effect to secure more than six per cent. interest. But no agreement appears to have been made with any such intent, or for any such purpose. The cashier states that the money was placed to the credit of Norton, and paid out as he drew checks for it; and, of course, it does not appear, in the language of the statute, that there was " actually reserved or taken above the rate of interest prescribed by law." The proposition of Norton, taken in connexion with the memorandum of the president, seems to show merely an indication of the times and the manner of using the funds, which Norton's necessities would be likely to call for; with a view, on his part, doubtless, to induce the bank to make the loan, rather than any binding stipulation between the parties.

The defendant further contends, that it appears on the cashier's books, that the note had been discounted, and the amount credited by him on the second of January; and that the note, thereupon, became absolutely the property of the plaintiffs; so that the indorsement of the defendant, some ten or fifteen days afterwards, was without consideration, and therefore was, as to him, *nudum pactum.* It appears to be true, that the cashier did so enter the negotiation upon his books; but he testifies, that this was done, by him without express directions therefor, as was occasionally done, when notes were provisionally discounted; but that, till the terms were complied with, nothing,

except the one hundred dollars, advanced in anticipation, would have been paid out.

It appears clearly, that there was no other understanding between the parties than, that this note should be received, and the credit given provisionally, viz. upon its being indorsed, waiving demand and notice by the defendant. By its being so indorsed the negotiation became absolute, and not before. And we cannot doubt but that it was competent to the plaintiffs to show this, notwithstanding the entry of the cashier, under the circumstances testified to by him, upon his books. No such unqualified entry constituted, or was in accordance with the real agreement between the parties.

We therefore think the default must stand ; and that judgment must be entered accordingly.

*Mem.* — TENNEY J. having been of counsel in this case, took no part in the hearing or decision.